UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BETHANN M. VANFLEET, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 3:13-CV-1079-CAN |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

On October 7, 2013, Plaintiff Bethann M. VanFleet ("VanFleet") filed her complaint in this Court. On February 10, 2014, VanFleet filed her opening brief requesting that this Court reverse this cause altogether. In the alternative, VanFleet seeks a remand of this matter to the Commissioner for further consideration with the principles outlined in her brief. On May 18, 2014, Defendant Commissioner of Social Security, Carolyn W. Colvin ("Commissioner") filed her response brief. VanFleet filed a reply on May 29, 2014. This Court may enter a ruling in this matter based on the parties consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

**I.  PROCEDURE**

On September 7, 2010, VanFleet filed her application for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI") pursuant to 42 U.S.C. §§ 416(i), 423 alleging a disability due to degenerative disc disease, obesity, and a history of carpal tunnel syndrome with an initial onset date of September 1, 2006, but amended to March 12, 2008 at her administrative hearing. (Doc.

No. 7 at 16, 18). Her claims were denied initially on December 21, 2010, and also upon reconsideration on February 23, 2011. (*Id.* at 16). VanFleet appeared at a hearing before an Administrative Law Judge (ALJ) on February 22, 2012 (*Id.*).

On May 9, 2012, the ALJ issued a decision holding that VanFleet was not disabled (Doc. No. 7 at 32). The ALJ found that VanFleet met the insured status requirements of the Social Security Act through December 31, 2010 (*Id.* at 18). The ALJ also found that VanFleet had not engaged in substantial gainful activity since March 12, 2008, and her degenerative disc disease, obesity, and history of carpal tunnel syndrome constituted severe impairments. (*Id.*). However, the ALJ found that VanFleet does not have an impairment of combination of impairments that met of medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Doc. No. 7 at 19). The ALJ found that VanFleet retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a). However, she should never climb ladders, ropes, or scaffolds; should no more than occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; cannot sustain any one position, either sitting or standing, for greater than thirty minutes; must alternate positions once every thirty minutes; and is limited to performing frequent, but not constant gross manipulation (*Id.* at 20). The ALJ then found that VanFleet is capable of performing her past relevant work as a document preparer or microfilming (*Id.* at 30).

On August 22, 2013, the Appeals Council denied review of the ALJ's decision making it the Commissioner's final decision (Doc. No. 7 at 6). *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005); 20 C.F.R. § 404.981. On October 7, 2013, VanFleet filed a complaint in this Court seeking a review of the ALJ's decision.

## II. ANALYSIS

### A. Facts

VanFleet was a thirty-four year old female at the time the ALJ denied her claims. She has a GED and performed past relevant work as a document preparer or microfilming at a data bank.

#### 1. Claimant's Hearing Testimony

At the hearing, VanFleet testified she suffered from back pain that radiated down her legs, headaches, and a numbing pain in her hands due to carpal tunnel syndrome. VanFleet testified her back goes out approximately six times a month during which she is incapacitated for one to two days. She explained that when she is incapacitated, she works to alleviate her pain by lying in bed, using a heating pad and TENS unit[1], and taking hot baths in Epsom salt. She testified that her prior medical treatment had included physical therapy, but that the therapy did not successfully loosen any muscles. She also noted that she takes pain medication with only one reported side effect, an upset stomach. VanFleet indicated her headaches, occurring daily, cause nausea and sensitivity to light and motion, which cause further pain. She testified to having difficulty with her hands allowing her to write only half a page before experiencing a tingling sensation, but claimed that she maintains the ability to button and zip.

VanFleet explained that in a typical day she prepares her children for school, assists them with dressing, makes breakfast, and when she "feels up to it" completes household chores. (Doc. No. 7 at 65). When she is not incapacitated, VanFleet asserted that she is able to do light household work including dishes and vacuuming, but is unable

---

[1] "TENS" stands for transcutaneous electrical nerve stimulation. A TENS unit uses electrical currents to stimulate nerves and relieve pain. Valma J. Robertson, Alex Ward, John Low & Ann Reed, *Electrotherapy Explained: Principles and Practice* (4th Ed. 2006).

3

to perform activities that require bending. VanFleet also stated that she is able to drive to complete errands and attend medical appointments. She testified daily activities require frequent breaks due to pain and on days when her back is out, she receives assistance from her parents with whom she lives.

VanFleet stated her back pain enables her to sit for approximately fifteen minutes and stand for approximately ten to fifteen minutes. In addition, VanFleet stated she could lift a gallon of milk and walk approximately one block before she experiences the feeling of bolts "ripping out of her back." (Doc. No. 7 at 61).

### 2. Medical Evidence Regarding Back Pain and Carpal Tunnel Syndrome

VanFleet first complained of back pain to her primary treating physician, Dr. Patrick Fleming, on August 31, 2006. Dr. Fleming continued to treat VanFleet through 2008, at which time she changed physicians to Dr. Manjeet Geeta. On April 9, 2008, she was referred to an orthopedist, Dr. Richard Oni, and underwent a microdiskectomy due to disc herniation at L4-L5 with right lower radiculopathy[2]. Following the procedure, VanFleet had complete relief of her symptoms, but returned to Dr. Oni on July 17, 2008, with complaints of returned back pain. Dr. Oni prescribed a medicaiton regimen to alleviate pain, but, VanFleet continued to complain of persistent pain. On November 12, 2008, VanFleet received a steroid injection with no relief of pain. Dr. Oni referred VanFleet to physical therapy and continued to prescribe pain medication. Following ongoing complaints of pain, Dr. Oni ordered a CT discogram on February 9, 2009, which showed mild degenerative disc disease at L3-L4, moderate degenerative disc disease a

---

[2] A disease of the nerve roots. Dorland's Illustrated Medical Dictionary 1109 (26th ed. 1987).

L4-L5, and extensive degenerative disc disease at L5-S1. Dr. Oni recommended corrective surgery and strongly advised VanFleet to quit smoking.

VanFleet underwent the spinal fusion[3] on August 6, 2009, and obtained complete relief of her symptoms. Prior to her corrective surgery, VanFleet complained of wrist pain and underwent an electromyography around July 31, 2009, which revealed chronic moderate bilateral median mononeuropathy at the wrist consistent with bilateral carpal tunnel syndrome.[4] VanFleet underwent two carpal tunnel surgeries by Dr. Richter on November 18, 2009, and December 11, 2009. Dr. Richter's follow up notes show VanFleet doing well and only taking over-the-counter medication for swelling.

On November 16, 2009, Dr. Oni indicated VanFleet continued to do well following her spinal fusion and required only one to two pain medications a day. She presented new complaints on that same date of neck pain for which an MRI was ordered. On December 28, 2009, Dr. Oni reported ongoing improvements with VanFleet's lower back, but persistent complaints of neck pain for which physical therapy was ordered. Dr. Oni's follow up notes from February 22, 2010, show VanFleet continued to do well, but returned to smoking three weeks prior. Dr. Oni indicated a decreased consolidation of the fusion site, which he believed was likely related to her smoking habit. VanFleet began physical therapy on March 10, 2010, and attended ten sessions through April 22, 2010.

---

[3] Spinal fusion is a surgical procedure used to correct problems with the small bones of the spine (vertebrae). It is essentially a "welding" process. The basic idea is to fuse together the painful vertebrae so that they heal into a single, solid bone. *American Academy of Orthopaedic Surgeons, "Spinal Fusion."* http://orthoinfo.aaos.org/topic.cfm?topic=A00348. (last visited July 21, 2014).

[4] Carpal tunnel syndrome occurs when the median nerve, which runs from the forearm into the palm of the hand, becomes pressed or squeezed at the wrist. Sometimes, thickening from irritated tendons or other swelling narrows the tunnel and causes the median nerve to be compressed. The result may be pain, weakness, or numbness in the hand and wrist, radiating up the arm. *National Institute of Neurological Disorders and Stroke* http://www.ninds.nih.gov/disorders/carpal_tunnel/detail_carpal_tunnel.htm#259463049 (last visited July 21, 2014).

Reports from physical therapy indicate she was able to bathe independently, drive, and perform household activities without pain or difficulty.

VanFleet returned to Dr. Oni on May 24, 2010, with persistent complaints of lower back pain. Dr. Oni's notes show she had returned to a full smoking habit and her lower back pain had recurred because the fusion mass was being destroyed by nicotine. Dr. Oni again advised her to quit smoking. VanFleet returned to Dr. Oni on September 23, 2010, with worsening complaints of lower back pain with radiation down both lower extremities. She also complained of recurrent neck pain and indicated prior physical therapy afforded little benefit. Dr. Oni prescribed pain medication and recommended additional physical therapy.

On November 19, 2010, Dr. Geeta prepared a report at the request of the Social Security Administration that indicated VanFleet suffered from neck and lower back pain, degenerative disc disease, and bilateral lower extremity radiculopathy requiring a change of position every fifteen to thirty minutes. Dr. Geeta additionally noted VanFleet required the use of a back brace.

On November 23, 2010, Dr. Mutena Korman saw VanFleet for a physical consultative evaluation. Dr. Korman found VanFleet to have 4/5 muscle strength overall with some compromised range of motion in her joints, 4/5 grip strength in both hands, normal curvature without any deformity in her cervical, thoracic, and lumbar spine, decreased range of motion throughout her body, some sensory loss in forelegs and feet, and signs of poor balance. Dr. Korman further found that VanFleet did not require any assistive device.

On December 2, 2010, VanFleet returned to Dr. Oni with continued complaints of back and neck pain and having resumed her full smoking habit. Dr. Oni prescribed pain medication and encouraged smoking cessation.

March 31, 2011, VanFleet met with orthopedist Dr. Thomas Ryan for neck and back pain and was still smoking. Dr. Ryan ordered an MRI of VanFleet's neck and lower spine and on May 5, 2011, Dr. Ryan ordered cervical epidural steroid injections. Dr. Ryan ordered a second cervical epidural steroid injection on July 14, 2011, and recommended physical therapy. On September 22, 2011, Dr. Ryan indicated that VanFleet had been complying with the physical therapy orders although she reported no changes in her symptoms. On October 25, 2011, following X-rays and a bone scan, Dr. Ryan discussed VanFleet's results and indicated the internal fixation device from her spinal fusion had fractured. On December 15, 2011, following a discography, Dr. Ryan recommended a second spinal fusion, which Dr. Geeta cleared VanFleet for on January 6, 2012.

On February 13, 2012, Dr. Geeta completed a Medical Source Statement that indicated VanFleet had degenerative disc disease, arthritis, anxiety, and chronic pain. Dr. Geeta noted VanFleet could sit for two hours, stand or walk for two hours, and would need to rest or lie down for four hours in an eight-hour work day. Additionally, Dr. Geeta reported VanFleet would need to elevate her legs for eighty percent of the workday, she could lift no more than ten pounds occasionally, and required a cane to aid in walking and standing.

3. <u>Medical Evidence Regarding Headaches</u>

VanFleet first complained of headaches to her primary care physician, Dr. Fleming, on September 22, 2008. Dr. Fleming prescribed Trexamet. However, on November 10, 2008, when VanFleet returned, she reported no relief despite the medication. VanFleet's next report of headaches came on November 16, 2009, when she met with Dr. Oni and complained of headaches occurring at the back of her head near her neck. VanFleet returned to Dr. Oni on December 28, 2009, with continued complaints of occipital headaches. About nine months later on September 13, 2010, VanFleet's primary care physician, Dr. Geeta, noted complaints of headaches. VanFleet's headaches continued as evidenced in notes from Dr. Korman on November 23, 2010, showing complaints of headaches and from Dr. Oni on December 2, 2010, indicating complaints of occipital headaches. The last record of Vanfleet's headaches was on March 21, 2011[5], when VanFleet visited Dr. Geeta who prescribed Topamax[6] based on her complaints of migraine headaches.

B. <u>Standard of Review</u>

In reviewing disability decisions of the Commissioner, the Court shall affirm the ALJ's decision if it is supported by substantial evidence and free of legal error. *See* 42 U.S.C. 405(g) (2006); *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003). "Substantial evidence" is more than a mere scintilla of relevant evidence that a reasonable mind might accept to support such a conclusion. *Richardson v.*

---

[5] The record shows VanFleet complained of headaches on August 31, 2011, while attending physical therapy at Duneland Health and Wellness, referred by Dr. Ryan. However, neither party addresses this date therefore the Court will not include it within its analysis.

[6] Topamax is prescribed to prevent migraine headaches. *RxList: The Internet Drug Index,* http://www.rxlist.com/topamax-drug/indications-dosage.htm (last visited July 21, 2014).

*Perales*, 402 U.S. 389, 401 (1971). To determine whether substantial evidence supports the Commissioner's final decision, a Court reviews the whole record including evidence that detracts from the Commissioner's findings in the decision. *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477-88 (1951). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. *Haynes*, 416 F.3d at 626. An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). However, and ALJ need not provide a "complete written evaluation of every piece of testimony and evidence." *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) (quoting *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995)). An ALJ's legal conclusions are reviewed *de novo*. *Haynes*, 416 F.3d at 626.

To be entitled to DIB or SSI under 42 U.S.C. § 1381a, VanFleet must establish that she is disabled. *See* 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant's impairment or combination of impairments is severe; (3) the claimant's impairment meets or equals any impairment listed in the regulations and therefore is deemed so severe as to preclude substantial gainful activity; (4) the claimant is able to perform her past relevant work

9

given her RFC; and (5) the claimant can adjust to other work in light of her RFC. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)[7]; *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps. 20 C.F.R. § 404.1520(a)(4). An affirmative answer at either step three or step five establishes a finding of disability. *Briscoe*, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the Commissioner acknowledges the impairment and finds the claimant to be disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. App. 1, Subpart P, § 404. However, if the impairment is not so listed, the ALJ assesses the claimant's RFC, which is then used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. 404.1520(e)-(g). The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five. *Young*, 362 F.3d at 1000.

C. Issues for Review

VanFleet raises three issues that the Court must resolve. First, the Court must ascertain whether the ALJ supported his Step Two severity determination as to VanFleet's headaches with substantial evidence. Second, the Court must determine whether the ALJ's RFC determination is supported by substantial evidence. Specifically, VanFleet argues that the ALJ erred in failing to accord controlling weight to the opinions

---

[7] Due to the identical thrust of the regulations covering DIB and SSI, the Court will simply refer to 20 C.F.R. § 404 in the future.

10

of her treating physician, Dr. Geeta. Third, the Court must consider whether the ALJ failed to support his Step Five determination with substantial evidence.

        1.      <u>The ALJ did not err in failing to find VanFleet's headaches a severe impairment.</u>

VanFleet challenges the ALJ's Step Two severity determination arguing that the medical evidence shows that her migraine headaches constitute a severe impairment. Specifically, VanFleet contends the ALJ's finding that her headaches are not a severe impairment is patently wrong because the evidence clearly reflects that she complained of ongoing, persistent headaches for which she received treatment since 2008. Review of the ALJ's opinion shows that VanFleet's argument is misplaced.

A claimant satisfies the second step of the Agency's five-step sequential disability evaluation process if she has an impairment of combination of impairments that is "severe," as defined by the regulations. To determine whether a claimant's impairment is severe, an ALJ must determine whether the impairment "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); SSR 96-3p, 1996 WL 374181 (July 2, 1996). SSR 96-3p further provides that "an impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." Even impairments that are not severe on their own must be considered because the combination of impairments may be severe. 20 C.F.R. § 404.1523. To be severe, a medically determinable impairment must also meet the one-year durational requirement in 20 C.F.R. § 404.1509, unless the impairment is expected to end in death. *See* 20 C.F.R. § 404.1509.

In this case, the ALJ acknowledged VanFleet's complaints of headaches and the occasional mention of headaches throughout VanFleet's medical record. Doc. No. 7 at 19. However, the ALJ articulated VanFleet's activity level, including driving, and the absence in the record of regular complaints about headaches on an ongoing basis as support for his finding that VanFleet's headaches do not constitute a severe impairment. *Id.* First, the ALJ highlighted VanFleet's failure to consistently complain of headaches. The ALJ cited to the record to show that VanFleet's primary care physician, Dr. Geeta, continued to document VanFleet's denial of headaches. *Id.* at 26. The ALJ drew further support for his decision by discussing VanFleet's March 21, 2011, visit to Dr. Geeta who prescribed Topamax. *Id.* The ALJ then highlighted Dr. Geeta's treatment notes from VanFleet's next visit on April 19, 2011, at which she did not complain about headaches suggesting that the Topamax had been effective. *Id.* Second, the ALJ noted VanFleet's own testimony, admitting her ability to complete various activities throughout the day, including driving, as indication that her headaches, even if severe, do not preclude her from completing work. Doc. No. 7 at 19. Therefore, the ALJ supported his Step Two determination about the severity of VanFleet's headaches with substantial evidence.

Even if the ALJ's severity determination about VanFleet's headaches was wrong like VanFleet contends, that error would not justify remand in this case. An ALJ's failure to find a claimant's alleged impairment severe does not warrant remand where the ALJ proceeds beyond Step Two of his analysis and considers the impact of all of a claimant's impairments on her ability to work. *Curtis v. Astrue*, 623 F. Supp. 2d 957, 967 (S.D. Ind. 2009). In this case, the ALJ found VanFleet to have three severe impairments and went on to consider the record as a whole, including VanFleet's headaches, in determining

VanFleet's RFC. Therefore, the ALJ's decision not to categorize VanFleet's headaches as a severe impairment did not stop the sequential process from progressing further and could not constitute error worthy of remand. *Id.*

        2.      <u>The ALJ's finding that Dr. Geeta's opinions were not entitled to controlling weight is supported by substantial evidence.</u>

An individual's RFC demonstrates her ability to do physical and mental work activities on a sustained basis despite functional limitations caused by any medically determinable impairment(s) and their symptoms, including pain. 20 C.F.R. § 404.1545; SSR 96-8p 1996. In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the case record. 20 C.F.R. § 404.1545. The record may include medical signs, diagnostic findings, the claimant's statements about the severity and limitations of symptoms, statements and other information provided by treating or examining physicians and psychologists, third party witness reports, and any other relevant evidence. SSR 96-7p 1996. "Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone." SSR 96-8p. However, it is the claimant's responsibility to provide medical evidence showing how her impairments affect her functioning. 20 C.F.R. § 404.1521(c). Therefore, when the record does not support specific physical or mental limitations or restrictions on a claimant's work-related activity, the ALJ must find that the claimant has no related functional limitations. *See* SSR 96-8p.

VanFleet seeks a remand for further consideration of the medical opinion of her treating physician Dr. Manjeet Geeta. She contends that the ALJ incorrectly concluded the opinion of Dr. Geeta was inconsistent with the medical evidence in the record.

Specifically, VanFleet argues that the ALJ acknowledged Dr. Geeta's statements that VanFleet suffered from impairments that severely limit her ability to perform work-related activity, but nevertheless incorrectly concluded that the limitations were inconsistent with other medical evidence. VanFleet further argues that the ALJ improperly assigned great weight to the opinions of the nonexamining state agency physicians.

In determining the proper weight to accord medical opinions, the ALJ must consider factors including the claimant's examining and treatment relationship with the source of the opinion; the physician's specialty; the support provided for the medical opinion; and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(1)-(6); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). A "treating source" is a medical professional who provides medical treatment or evaluation to the claimant and has or had an ongoing relationship with the claimant. 20 C.F.R. § 404.1502. An ongoing relationship exists when the medical record shows that the claimant saw the source frequently enough to be consistent with accepted medical practices for the treatment of the medical condition. *Id*.

An ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and if it is consistent with other substantial evidence in the record. *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 200); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); 20 C.F.R. § 404.1527(d)(2); SSR 96-8p; SSR 96-2p. Generally, ALJs weigh the opinions of a treating source more heavily because he is more familiar with the claimant's conditions and circumstances. *Clifford*, 227 F.3d at 870; 20 C.F.R. § 404.1527(d)(2). However, a

14

claimant is not entitled to benefits merely because a treating physician labels her as disabled. *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). A medical opinion may be discounted if it is internally inconsistent or inconsistent with other substantial evidence in the record. *Clifford*, 227 F.3d at 870. While the ALJ is not required to award a treating physician controlling weight, the ALJ must articulate, at a minimum, his reasoning for not doing so. *Hofslien*, 439 F.3d at 376-77. Although the ALJ is required to consider and discuss a treating physician's opinion, *see* 20 C.F.R. § 416.927(c)(2), the ALJ is not bound by conclusory statements of doctors or medical opinions that are unsupported or inconsistent with substantial evidence in the record, *see Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000). The ALJ's reasoning should be based on the relevant factors applied to all medical opinions as stated above. *See* 20 C.F.R. § 404.1527(d)(2)-(6).

In this case, the ALJ accorded little weight to Dr. Geeta's opinion. VanFleet challenges the weight afforded to Dr. Geeta's November 19, 2010, and February 13, 2012, opinions by the ALJ. In support, VanFleet argues that the ALJ's decision did not apply the six factors that should be evaluated when determining the weight that should be given to a treating physician's opinion. *See* 20 C.F.R. § 404.1527(d)(2); *see also Butera v. Apfel*, 173 F.3d 1049 (7th Cir. 1999). VanFleet contends the ALJ only applied the fifth factor regarding the consistency of the opinion with the record as a whole. Further, VanFleet argues the ALJ impermissibly played doctor in deciding the amount of time VanFleet would need to alternate positions. VanFleet's arguments are misplaced.

First, the ALJ clearly acknowledged Dr. Geeta's status as VanFleet's primary treating physician since 2008. Doc. No. 7 at 23. Second, the ALJ reviewed and discussed

15

treatment notes of several doctors, including Dr. Geeta and treating orthopedic surgeon Dr. Oni, in considering whether Dr. Geeta's opinion was entitled to controlling weight. The ALJ considered Dr. Geeta's November 2010 opinion, which indicated VanFleet suffered from neck and lower back pain with radiculopathy and a decreased range of motion in her lumbar and cervical spine. *Id.* at 28. Dr. Geeta's opinion also indicated that due to VanFleet's neck and back pain, she would need to change positions every fifteen to thirty minutes. In discounting this opinion, the ALJ noted VanFleet's conflicting testimony that she spent her days watching TV without any indication that she could not sustain the same position for more than fifteen minutes. *Id.* The ALJ further referenced the treatment notes of Dr. Oni, which failed to indicate similar limitations. *Id.*

VanFleet's arguments also fail to persuade the Court because the ALJ included the requirement that VanFleet be allowed to alternate positions every thirty minutes, which is within the range suggested by Dr. Geeta, in VanFleet's RFC. *Id.* Nevertheless, VanFleet goes on contending this RFC determination is reflective of the ALJ impermissibly playing doctor. An ALJ who rejects the medical opinions of record and then constructs his own RFC without supporting medical evidence also impermissibly plays doctor. *Baily v. Barnhart*, 473 F. Supp. 2d 822, 839 (N.D. Ill. 2006); *see also Norris v. Astrue*, 776 F. Supp. 2d 616, 637 (N.D. Ill. 2011). In making his RFC determination, the ALJ is not required to rely entirely on a particular physician's opinion. *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007); *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995). Here, the ALJ incorporated the requirement that VanFleet be permitted to change positions every thirty minutes, the outer limit of Dr. Geeta's restriction. Doc. No. 7 at 28. Moreover, the ALJ found Dr. Geeta's opinion to be inconsistent with the record

as Dr. Oni provided no limitation that mirrored Dr. Geeta's opinion and VanFleet testified that she spends her day watching TV with no indication as to her inability to sustain one position for more than fifteen minutes.

In addition, the ALJ considered Dr. Geeta's February 2012 Medical Source Statement, which indicated VanFleet required certain limitations due to her cervical and lumbar disc disease, arthritis, numbness, muscle weakness, and chronic pain. In that opinion, Dr. Geeta opined that VanFleet needed to lie down or recline for fifteen minutes throughout the work day and elevate both of her legs for a total of two hours. Further, Dr. Geeta claimed VanFleet had joint deformity, reduced grip strength, and sensory changes. The ALJ found this opinion to be inconsistent with the record and Dr. Geeta's own treatment notes. For support, the ALJ highlighted Dr. Geeta's own notes that showed neurological testing of VanFleet was consistently normal with no indication of joint deformity or reduced grip strength. Doc. No. 7 at 28-29. The ALJ also articulated the inconsistency between the opinions of Dr. Geeta and Dr. Oni, VanFleet's treating orthopedic specialist, regarding VanFleet's required limitations. *Id.* Earlier in his opinion, the ALJ discussed several of Dr. Oni's treatment notes which contained no limitations for VanFleet. *Id.* at 24. Furthermore, the ALJ's reference to the conflicting opinions of Drs. Geeta, Oni, Korman, and Ryan support his determination that Dr. Geeta is not entitled to controlling weight.

VanFleet's argument does not stop there. She also argues after discounting the opinion of Dr. Geeta[8] that the ALJ improperly accorded great weight to the opinions of

---

[8] VanFleet incorrectly cites 20 C.F.R. § 404.1512(e) in support of her argument that the ALJ incorrectly rejected Dr. Geeta's opinions as inconsistent. VanFleet asserts the cited regulation requires the ALJ to recontact Dr. Geeta to resolve any inconsistencies he felt were reflected in the record. The cited regulation does not say what VanFleet claims it does. Instead, VanFleet's is found in the social security practice

17

the nonexamining state agency physicians, J. Sands, M.D., and M. Brill, M.D. Specifically, VanFleet challenges the elevated weight given to Drs. Sands's and Brill's opinions because they only reviewed VanFleet's records from which they completed pre-printed questionnaires.

Dr. Sands completed a Physical Residual Functional Capacity Assessment indicating VanFleet could perform light exertional work with occasional postural limitations except that she could not climb ladders, ropes, or scaffolds. This opinion was later affirmed by Dr. Brill. The ALJ assigned "great weight" as to the postural limitations in these physicians' opinions. Doc. No. 7 at 29. VanFleet contends the physicians' opinions were outdated because they were based on the record without specific medical evidence. However, after the ALJ adopted the physicians' postural limitation, the ALJ articulated the need for greater limitations than those recommended by Drs. Sands and Brill as indicated in subsequent records. Doc. No. 7 at 29.

Thus, having discussed inconsistencies between Dr. Geeta's opinion and the record, including Dr. Geeta's own treatment notes and opinions, as well as reviewing VanFleet's treatment history and testimony, the ALJ met his burden to explain why Dr. Geeta's opinion was not entitled to controlling weight. In doing so, the ALJ supported his RFC determination with substantial evidence.

### 3. Substantial evidence supports the ALJ's Step Five finding

VanFleet's final argument challenges the ALJ's Step Five finding, claiming it was not supported by substantial evidence. In support, VanFleet revisits the ALJ's decision not to accord controlling weight to Dr. Geeta's opinions as an explanation for the

---

source guide *Bohr's Social Security Issues Annotated "Sample Appeals Council Arguments: A survey of common errors in ALJ decisions.*" Sarah H. Bohr, Chantal J. Harrington & Kimberly V. Cheiken, Bohr's Social Security Issues Annotated O-10 (James Publishing, Inc. 1998) (2012).

allegedly faulty Step Five determination. Specifically, VanFleet contends the testimony of the vocational expert ("VE") shows that if the ALJ had properly weighed the evidence and given controlling weight to Dr. Geeta's opinions, a finding of disability would have necessarily followed.

At Step Five of the sequential evaluation process, the ALJ must determine whether the claimant is able to do any work considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g). A VE or specialist may offer expert testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairments can meet the demands of the claimant's previous work. 20 C.F.R. § 404.1560(b)(2). The hypothetical question an ALJ poses to a VE need only set forth the claimant's limitations and abilities to the extent they are supported by the record evidence. *Herron v. Shalala,* 19 F.3d 329, 337 (7th Cir. 1994); *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992). An ALJ is required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible. *See Schmidt v. Astrue,* 496 F.3d 833, 846 (7th Cir. 2007). Where the hypothetical does not include all of the applicant's limitations, there must be some amount of evidence in the record indicating that the vocational expert knew the extent of the applicant's limitations. *Young v. Barnhart,* 362 F.3d 995, 1003 (7th Cir. 2004) (citing *Steele v. Barnhart,* 290 F.3d 936, 942 (7th Cir. 2002).

In this case, the ALJ posed a hypothetical question that reflected the RFC that has already been affirmed by this Court in the analysis above. The hypothetical included the limitations the ALJ found to be fully credible based on the record and was based on the

ALJ's proper articulation of weight for Dr. Geeta's opinion as discussed above. Therefore, the hypothetical question was proper and the ALJ's Step Five determination is supported by substantial evidence. *See Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007).

### III.    CONCLUSION

For the reasons stated above, the ALJ's determination that VanFleet is not disabled for purposes of DIB and SSI is supported by substantial evidence. Therefore, VanFleet's motion to reverse or remand is **DENIED**. [Doc. No. 13] This Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is instructed to term the case and enter judgment in favor of the Commissioner.

**SO ORDERED.**

Dated this 15th Day of August, 2014.

s/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge